UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ANDRE PAYNE, | |
| Petitioner, | |
| v. | CAUSE NO.: 3:23-CV-597-MGG |
| WARDEN, | |
| Respondent. | |

OPINION AND ORDER

Andre Payne, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Indiana State Prison (ISP 22-09-0164) in which he was found guilty of violating Disciplinary Offense A-117, Battery Against a Staff Person, Volunteer, Visitor, or Contractor. (ECF 1.) For the reasons stated below, the petition is denied.

The charge was initiated on September 9, 2022, when Officer J. Allen wrote a conduct report stating as follows:

> On 9/8/2022 at approx. 7 pm while I was on 500 trying to lock the bar rolling box Incarcerated Individual Payne ran up to the 400 where I was I asked him "how the fuck you got up here" he said I found a way to get through. As a turned to go down the stairs to continue to check the boxes he grabbed my butt I turned around and punched him in the chest. He said "I'll take that it was worth it" he then began to follow me down to 400 so I sprayed with my OC he backed off.

(ECF 7-1) (errors in original). On October 3, 2022, Mr. Payne was formally notified of the charge and given a copy of the conduct report. (ECF 7-2; ECF 7-1.) He pled not guilty and requested a lay advocate, and one was appointed for him. (ECF 7-2; ECF 7-3.) He

requested witness statements from Sergeant Boylon, Lieutenant Winn, and Officer Grams (first names unknown) regarding whether he had been sprayed with chemical spray or whether Officer Allen had reported to them that she sprayed someone with chemical spray. (ECF 7-2.) He also requested review of the camera evidence to show "she let someone on the 400 E not me." (*Id.*) Finally, he requested a "restrictive housing form," which appears to be a form completed when he was taken to restrictive housing after this incident, and any "use of force" form that was completed by Officer Allen in order to "see original charge." (*Id.*)

Prior to the hearing, statements were obtained from Sergeant Boylon, Lieutenant Winn, and Officer Grams. Sergeant Boylon stated as follows: "On 9-8-22 I was sent to take II Payne to MSU because Ofc Allen reported that she sprayed him. When I arrived at II Payne cell he was asleep and did not appear that he had been sprayed at all." (ECF 7-6 at 1) (errors in original). Lieutenant Winn stated as follows: "I was on the unit but at no time was anything reported to me by Ofc Allen. This includes her spraying anyone." (ECF 7-6 at 2). Finally, Officer Grams stated: "I Ofc Grams did not witness nor was I notified of the incident between Ofc Allen and I/I Payne." (ECF 7-6 at 3.)

The hearing officer denied his request for the camera evidence because, in her words, "Incident happened on 500 East not 400." (ECF 7-2.) She likewise denied his request for certain forms, finding the documents confidential and irrelevant. (*Id.*) Shortly before the hearing, he also requested a witness statement from Captain Calloway (first name unknown) to answer the question, "When was last day C/O Allen

2

reported to work?" (ECF 7-7 at 1.) The hearing officer denied this request as irrelevant. (*Id.*)

On November 17, 2022, a hearing was held. (ECF 7-5.) The hearing officer noted that Mr. Payne pled not guilty and made the following statement in his defense: "The reporting officer was supposed to get sent back for corrections and it never did.[1] I never received my camera evidence." (*Id.*) (errors in original). The hearing officer considered this statement, along with staff reports and witness statements, and found Mr. Payne guilty. (*Id.*) He was sanctioned with the loss of earned credit time, temporary placement in restrictive housing, and a demotion in credit-earning class. (*Id.*)

When prisoners lose earned credit time in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to have their case decided by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the decisionmaker of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

---

[1] An internal record reflects that Officer Allen was told to revise her report to omit the profane language that she had used. (ECF 10 at 1.) She apparently never corrected the report, and it appears she may have quit after this incident. (*Id.*) Mr. Payne does not raise a specific claim about this issue, nor does the court find any basis in the record to conclude that Officer Allen's failure to remove profane language from the report prejudiced his due process rights in any way.

Mr. Payne asserts one claim in his petition: that his due process rights were violated because the hearing officer did not consider the camera evidence he requested. (ECF 1 at 2.) Inmates have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564. However, the right only extends to evidence that is exculpatory. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996).

Prior to the hearing, Mr. Payne requested that camera evidence from "400 E" be viewed. (ECF 7-2.) The hearing officer denied this evidence stating: "Incident happened on 500 East not 400." (*Id.*) The court finds this statement puzzling, because Officer Allen herself reported that although the incident began "on 500" as she was making her rounds, Mr. Payne attempted to follow her "down to 400." (*Id.*) It was clear from context that Mr. Payne was requesting available camera evidence depicting his interactions with Officer Allen on the date in question, which certainly appears relevant.

Nevertheless, the harmless error analysis applies in prison disciplinary proceedings. *Piggie*, 342 F.3d at 666. The respondent has submitted the camera evidence with the return, and the court's own review of this evidence reflects that it is not exculpatory. (ECF 10.) Much of the incident occurs out of view of the camera, but it does show Officer Allen entering an area and Mr. Payne following immediately after

4

her.[2] There are no other inmates in the area. A few seconds later, Mr. Payne exits the area quickly and appears to be holding his face or wiping his face with his t-shirt. He can then be seen re-entering the area briefly and again appears to be wiping his face with his t-shirt. The camera evidence thus corroborates certain aspects of Officer Allen's account, and certainly does not undercut it. The court finds any error committed by the hearing officer in connection with the camera evidence harmless. *Piggie*, 342 F.3d at 666.

Mr. Payne may also be claiming that his rights were violated because he was not given an opportunity to view the camera evidence himself. Under the Due Process Clause, inmates have a right to request evidence, but not necessarily to personally review it. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The court has reviewed the video and concludes that it could compromise prison security to disclose this evidence to Mr. Payne, as it would reveal the location and capabilities of the prison surveillance system. *See Wolff*, 418 U.S. at 566; *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011). As stated above, there is also nothing on the video that would exculpate him from the charge. He has not established a due process violation.

---

[2] The respondent has submitted an affidavit from the hearing officer who attests that she is personally familiar with Mr. Payne and that he is the inmate on the video. (ECF 7-12 ¶¶ 3-4.) He does not provide any evidence to draw this statement into question or dispute that he was present; instead he claims he was simply standing nearby when Officer Allen opened the gate for another inmate. (ECF 13-1 at 4.) However, there is only Officer Allen and one inmate—identified by staff as Mr. Payne—visible on camera.

Within his claim, he may also be arguing that there was an insufficient basis to find him guilty. In a disciplinary proceeding, evidence will satisfy due process if it passes the "some evidence" test. *Hill*, 472 U.S. at 455. This "is a lenient standard, requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks*, 81 F.3d at 721. Furthermore, it is not the province of a federal court to reweigh the evidence on habeas review to make its own determination of guilt or innocence. *Webb*, 224 F.3d at 652. Rather, the only question is whether there is some evidence to support the hearing officer's determination. *Id.*

Mr. Payne was found guilty of Disciplinary Offense A-117, "Battery Against a Staff Person, Volunteer, Visitor, or Contractor." (ECF 7-10 at 3.) Battery, in turn, is defined as "[k]nowingly or intentionally touching another person in a rude, insolent or angry manner[.]"[3] (ECF 7-11 at 3.) Officer Allen's account provides sufficient evidence that Mr. Payne violated this rule. Specifically, she stated that as she was carrying out her duties, Mr. Payne followed her and then "grabbed [her] butt." (ECF 7-1.) His

---

[3] "Rude" and "insolent" are not defined by the disciplinary code, but Webster's Dictionary defines rude as "offensive in manner or action" or "discourteous." WEBSTER'S DICTIONARY, *Rude.* https://www.merriam-webster.com/dictionary/rude. Certainly grabbing someone's buttocks without their permission qualifies as offensive or discourteous, and Mr. Payne does not argue otherwise.

6

subsequent comment to her about it being "worth it" suggests his contact with her was not accidental. The witness statement from Sergeant Boylon corroborated Officer Allen's account, in that it reflected that she made a contemporaneous report about spraying Mr. Payne with chemical spray, although he apparently did not suffer any significant ill effects.[4] This was not a criminal trial where guilt had to be proven beyond a reasonable doubt. *Moffat v. Broyles*, 288 F.3d 978, 981-82 (7th Cir. 2002). Instead, there only had to be "some" evidence of guilt to satisfy due process. *Meeks*, 81 F.3d at 721. This standard is satisfied.

For these reasons, the court:

(1) GRANTS the respondent's motion to maintain evidence under seal (ECF 8);

(2) DENIES the petition (ECF 1); and

(3) DIRECTS the clerk to close this case.

SO ORDERED on March 12, 2024

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

---

[4] A confidential incident report submitted by the respondent reflects that Mr. Payne was examined by a nurse after this incident, who provided him with a 10-minute decontamination shower. (ECF 9 at 1.) The court finds a sufficient basis to maintain this internal report and an internal email (ECF 9-2) under seal for the reasons outlined in the respondent's motion. (ECF 8.)